UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WILSONIS AYALA-VILLANUEVA,

 Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

 Respondent.

Case No. 2:09-CV-1272-KJD-PAL

**ORDER**

 Presently before this Court is Respondent's Motion for Summary Judgment (#77). Petitioner filed an Opposition and a Cross Motion for Summary Judgment (#78) to which Respondent filed a Reply (#79).

**I. Background**

 The present matter was transferred to the Court from the Ninth Circuit Court of Appeals for a new hearing on Petitioner's nationality claim and a decision on that claim as if an action had been brought for declaratory relief under 28 U.S.C. § 2201[1]. Removal proceedings were initiated against Petitioner Wilsonis Ayala-Villanueva ("Ayala") on March 7, 2003, when the Department of

---

[1] The Court relies on the 9th Circuit's Ayala-Villanuava v. Holder, 572 F.3d 736, 738 (9th Cir. 2009) for much of the procedural and undisputed factual history.

1 Homeland Security ("DHS") issued and served on Ayala a notice to appear, charging him with
2 removal as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(G)
3 (theft offense) based on his conviction for possession of stolen property in violation of Nevada
4 Revised Statutes § 205.275. Ayala claims that he is a derivative citizen and is therefore not
5 removable.  On three occasions, the Immigration Judge ("IJ") terminated the removal proceedings,
6 concluding that Ayala had presented substantial, credible evidence of his citizenship and that the
7 government had failed to prove deportability by clear and convincing evidence.  Each time the IJ
8 terminated removal proceedings, the DHS appealed to the Board of Immigration Appeals ("BIA").
9 The BIA sustained each DHS appeal and thrice remanded the matter to the IJ.

10 In her first order, filed December 5, 2003, the IJ concluded that Ayala had presented
11 sufficient evidence of his derivative citizenship.  The BIA, however, held that the IJ's citizenship
12 hearing was insufficient because it was conducted without prior notice to the parties and involved
13 only limited testimony from Ayala.  On remand, the IJ held extensive hearings and allowed the
14 parties to substantially develop the evidentiary record.  In her order of October 18, 2005, the IJ
15 extensively reviewed the documentary evidence and testimony concerning Ayala's citizenship.
16 Concluding that Ayala had presented substantial credible evidence in support of his citizenship claim
17 and that the government had failed to carry its ultimate burden of proving deportability by clear and
18 convincing evidence[2], the IJ ordered the proceedings terminated.  The BIA again sustained the
19 government's appeal, concluding that the IJ's reliance on Ayala's "newly discovered" birth certificate
20 was "clearly erroneous" and that Ayala had failed to rebut the presumption of alienage by substantial
21 credible evidence.

---

[2] In a removal proceeding, the DHS bears the burden of establishing by clear, unequivocal, and convincing evidence, all facts supporting deportability. Chau v. INS, 247 F.3d 1026, 1029 n. 5 (9th Cir.2001) (citing Murphy v. INS, 54 F.3d 605, 609-610 (9th Cir.1995)). Evidence of foreign birth gives rise to a rebuttable presumption of alienage, shifting the burden to the alleged citizen to prove citizenship. Id. Upon his production of substantial credible evidence in support of his citizenship claim, the presumption of alienage is rebutted. Id. The DHS then bears the ultimate burden of proving the respondent removable by clear and convincing evidence. Id.

In her third order terminating proceedings, the IJ expanded her analysis of the facts and law and suggested that the government's evidence supporting alienage had been discredited by Ayala. Because no new evidence had been submitted on remand, the BIA sustained the government's third appeal, saying that the IJ had "no basis to again terminate the proceedings." The BIA instructed the IJ that, on remand, she "should not reinstate her prior order and not terminate the proceedings, unless new and substantial evidence is provided which is sufficient to rebut the presumption of alienage in this case." The IJ then found that Ayala is a native and citizen of El Salvador and that, because he was convicted of an aggravated felony, he is removable. Accordingly, the IJ ordered Ayala removed to El Salvador. The BIA dismissed Ayala's appeal, and Ayala petitioned the Ninth Circuit for relief pursuant to 8 U.S.C. § 1252(b)(5). The Ninth Circuit found that a genuine issue of material fact about Ayala's nationality existed and subsequently transferred the proceedings to this Court for a *de novo* decision on Ayala's nationality claim as if an action had been brought for declaratory relief under 28 U.S.C. § 2201. After the action arrived in this Court, Respondent filed a Motion for Summary Judgment (#77), alleging that Ayala cannot satisfy his burden of proof.

**II. Legal Standard**

    **A. Standard of Review**

In a deportation case, "once removal proceedings have been initiated, a petition for review under 8 U.S.C. § 1252(b)(5) is the only avenue by which a person may seek a judicial determination of his or her status as a national of the United States." Chau v. INS, 247 F.3d 1026, 1028 n.2 (9th Cir. 2001). If, by finding of the reviewing court, "the record presents a genuine issue of material fact as to the petitioner's nationality, the reviewing court must transfer the proceeding to a district court for *de novo* determination." Ayala-Villanuava v. Holder, 572 F.3d 736, 738 (9th Cir. 2009). Meanwhile, the remaining issues in the petition to the reviewing court are held in abeyance pending a judicial determination of petitioner's citizenship claim from the district court. Id. at 740.

A petitioner in a declaratory judgment action before a district court must make a prima facie showing, and bears "the initial burden of proving citizenship by a preponderance of the evidence."

Sanchez-Martinez v. INS, 714 F.2d 72, 74 (9th Cir. 1983). "The allocation of the initial burden of proof flows from the nature of the proceeding. In the de novo hearing in district court, the citizen is in the position of a plaintiff seeking a declaratory judgment. He or she bears the initial burden of proof." Id. at n. 1.

If the petitioner makes a prima facie showing, the burden then shifts to the government to rebut this showing. Id. at 74. The type of burden the government then bears to rebut the petitioner's prima facie showing has not been established in the Ninth Circuit. The Ninth Circuit has held that, in a situation where there exists a prior determination of citizenship by the INS, "the government may then rebut the showing only by 'clear, unequivocal, and convincing' evidence." Id. Similarly, the Supreme Court has held that the government bears this same burden in deportation proceedings. Woodby v. INS, 385 U.S. 276, 286 (1966). However, the Ninth Circuit refrained from deciding whether or not this burden is identical in declaratory judgment cases in which the INS has not made a prior determination of citizenship, such as the case presently before this Court. Id. Specifically, the Ninth Circuit stated that it "does not now decide whether such a standard is applicable in the district court cases which do not have [prior determinations of citizenship]." Id. To date, the Ninth Circuit has yet to rule or again comment on the applicable standard. As the Ninth Circuit has used the clear, unequivocal, and convincing standard in similar situations (e.g. deportation proceedings and declaratory judgment cases in which the INS has previously made a prior determination of citizenship) and given the lack of guidance from the Ninth Circuit and other district courts under their jurisdiction, the burden that the Court will apply to Respondent's rebuttal is the clear, unequivocal, and convincing standard. This standard is uniform with the government's burden in similar proceedings in the Ninth Circuit and also protects the interests of the party whose alleged citizenship is at stake.

**B. Summary Judgment Standard**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law. See, Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See, Celotex, 477 U.S. at 323.

The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**III. Analysis**

Ayala was born out of wedlock in El Salvador on July 28, 1973. On October 23, 1982, when Ayala was nine years old, he was admitted to the United States as a lawful permanent resident. Ayala claims that he became a derivative citizen through his mother, Maria Dolores Villanueva ("Villanueva"), when she naturalized on February 19, 1987. "[D]erivative citizenship is determined under the law in effect at the time the critical events giving rise to eligibility occurred." Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir. 2005). Former section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a) (repealed 2000), which was in effect at the time of Villanueva's naturalization, governs Ayala's claim to citizenship. The statute provides, in pertinent part, that:

> A child born outside of the United States of alien parents ... becomes a citizen of the United States upon fulfillment of the following conditions:
> . . .
> (3) The ... naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of . . . the parent naturalized under clause . . . (3) of this subsection . . . .

8 U.S.C. § 1432(a).  It is undisputed that Ayala meets conditions (4) and (5); he was 13 years old and living in the United States as a legal permanent resident when his mother naturalized.  His derivative citizenship thus turns on whether he meets condition (3).

Before these proceedings, Ayala had assumed that his mother's husband, Jose Humberto Ayala Gaitan ("Humberto"), a native and citizen of El Salvador, was his father and that his mother and Humberto were married at the time of his birth.  Villanueva and Humberto, however, were not married until July 28, 1976, and each birth certificate included in the administrative record shows that Ayala was born out of wedlock.  Therefore, Ayala is a derivative citizen if his "paternity . . . has not been established by legitimation."  See 8 U.S.C. § 1432(a)(3).  Humberto's marriage to Villanueva establishes Ayala's paternity by legitimation and destroys Ayala's claim to citizenship only if Humberto is Ayala's father.  If, however, Humberto is not Ayala's father, Ayala's paternity was never established by legitimation and he is a derivative citizen.

The administrative record contains four documents purporting to be copies and translations of Ayala's birth certificate.  The two birth certificates obtained by Ayala and entered into the administrative record as exhibits 9 and 12 indicate that Ayala's father is not Humberto.  According to these documents, Ayala was born to Jose Tiburcio Ayala Gaitan ("Tiburcio"), who was a 21-year-old student at the time of Ayala's birth.  The birth record number shown on these certificates is 686 and the place of birth is given as Hospital San Pedro of Usulutan.  The government offered two birth certificates, exhibits 11 and 13, which indicate that Humberto is Ayala's father.  Humberto is identified as a 26-year-old small agriculturalist.  These two documents give Canton of San Antonio in Concepcion Batres as the place of Ayala's birth and indicate a birth record number of 386.  Despite these differences, all four birth certificates bear marked similarities.  They are consistent with regard to the date and time of Ayala's birth and the identity and description of his mother.  Each certificate also describes Ayala's father as being from Estanzualas and having the Personal Cedula Identification number 519653.  Lastly, all of the birth certificates indicate that they are found on page

6

349 in the book of births.  As the foregoing discussion makes clear, the evidence as to Ayala's paternity is heavily disputed and remains the crux of this case.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are not functions of the judge when ruling on a motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  While this is the general rule as set forth by the Supreme Court, an exception exists when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  This is, however, not applicable to either party's story.  The evidence in its current state would not compel a reasonable fact-finder to find in favor of a particular party.  Neither party has provided sufficient evidence either authenticating their proposed birth certificate or discrediting the opposing party's proposed birth certificate for purposes of granting summary judgment.  The Court finds that a genuine issue of material fact exists with respect to the identity of Ayala's father and the authenticity of birth certificates and that the resolution of this factual dispute will determine the citizenship status of Ayala.  As the evidence presented currently does not tip the scale in favor of either party, an evidentiary hearing is necessary so that the Court may determine the credibility of witnesses and authenticity of evidence in order to issue a declaratory judgment.

Petitioner will have the initial burden of production at the hearing.  Subject to the Federal Rules of Evidence, Petitioner may offer exhibits and testimony supporting his allegations of United States' citizenship.  If Petitioner satisfies his initial burden, the burden will then shift to Respondent.  Subject to the Federal Rules of Evidence, Respondent may then offer exhibits and testimony rebutting Petitioner's prima facie case.

Accordingly, **IT IS HEREBY ORDERED** that Respondent's Motion for Summary Judgment (#77) and Petitioner's Cross Motion for Summary Judgment (#78) are **DENIED**.

This case will proceed to an evidentiary hearing on the merits of Petitioner's nationality claim set for September 6, 2011.

**IT IS SO ORDERED**.

DATED this 14th day of July 2011.

_____
Kent J. Dawson
United States District Judge